[Civ. No. 21460. Second Dist., Div. Three. Oct. 18, 1956.]

HILDA L. M. KIMBALL DUFFEY, Respondent, v. FREDERICK H. DUFFEY, Appellant.

Cavalletto, Webster, Mullen & McCaughey, Thomas M. Mullen, Johnson & Stanton, Thomas E. Stanton, Jr., and Gardiner Johnson for Appellant.

J. F. Goux and Carleton B. Wood for Respondent.

SHINN, P. J.—This is an action for divorce in which plaintiff sought, *inter alia*, to recover the sum of $12,000 (later reduced to $10,000) allegedly disbursed by her for household expenses at defendant's instance and request and pursuant to his promise to repay her. Defendant cross-complained, seeking a declaration that the marriage was invalid, and filed a counterclaim by which he sought to recover the sum of $5,748 (later reduced to $5,641) allegedly loaned to plaintiff. The court decreed that the purported marriage of the parties was void *ab initio*, denied defendant relief on his counterclaim, and entered judgment for plaintiff in the amount prayed for. Defendant appeals from the last mentioned portions of the judgment.

Plaintiff and defendant, both residents of Santa Barbara, went to Tijuana, Mexico, on January 24, 1950 where they entered into what purported to be a proxy marriage before a person who was not authorized by Mexican law to perform a marriage ceremony or to execute valid proxies therefor. They returned to Santa Barbara where they cohabited for the next three years, believing in good faith that they were husband and wife. During this time defendant and his two minor daughters resided with plaintiff, her mother and her daughter in an elegant home which was her separate property. Defendant's minor son also lived there intermittently for about a year.

Defendant was employed as manager of Bekins Van & Storage in Santa Barbara at a salary of $7,200 per year. He owned 50 per cent of the stock of the local Bekins corporation on which he received dividends averaging $8,300 per year. Plaintiff's assets included $80,000 in a bank account which came from her deceased husband, building and loan deposits totaling $10,000, a vacant lot in Brentwood which she sold for $12,000 in 1950, her home which she valued at $54,000,

and 12 acres of surrounding land which she valued at $12,000. Plaintiff also received an allowance of $1,000 per month from the guardianship account of her daughter's estate.

During the purported marriage the parties maintained four bank accounts. Plaintiff had a personal account in which she deposited the monthly allowance from her daughter's guardianship account. Defendant also had a personal account in which he deposited his dividend checks. The parties maintained a joint household account in which defendant deposited his salary and to which plaintiff transferred money from her personal account. They also kept a joint capital, or building and investment account. The funds deposited in this account came from plaintiff's personal account, from the estate of plaintiff's deceased husband, from her monthly allowance, and from loans. Money in the capital account was used to improve plaintiff's home, to build three houses on the surrounding acreage for eventual sale, and to plant another part of the acreage with avocado trees.

The basis of plaintiff's claim is an alleged oral agreement made by her and defendant prior to or at the time of the purported marriage, whereby plaintiff agreed to contribute $500 per month (later voluntarily increased to $550 per month) toward the payment of household expenses in return for defendant's promise to shoulder the remainder of the expense of maintaining the household. It is plaintiff's theory, and the court below found, that ". . . plaintiff, upon the representation . . . of said defendant that he would at plaintiff's request reimburse her for the moneys and expenses incurred by her in providing defendant and his family with a dwelling . . . and in providing other necessities of life for the maintenance and support of plaintiff and defendant and his family . . ., did provide said defendant and his family with said dwelling . . . and said other necessities. . . . That . . . between January 24, 1950, and March 15, 1953, at the special instance and request of defendant . . . and upon defendant's promise to repay the same to plaintiff after request, the plaintiff . . . advanced, paid out and disbursed the sum of $10,000 for and on account of the household expenditures incurred by defendant . . . *in connection with the maintenance and support of defendant and his said family at the dwelling and home place of plaintiff.*'' (Emphasis ours.) The $10,000, we must assume, was over and beyond the sums of $500 or $550 per month which plaintiff agreed to contribute. Our interpretation of the finding is that plain-

tiff's contributions in these amounts were deemed sufficient to defray the expenses of plaintiff's part of the household and that the remaining expense was chargeable to defendant.

Defendant contends, on the other hand, that there was no evidence of any agreement to reimburse plaintiff and that plaintiff's expenditures in excess of her monthly contributions went toward the improvement and maintenance of her separate property and not toward the support of defendant and his children.

■ Viewing the testimony in the light most favorable to plaintiff (*Overton* v. *Vita-Food Corp.*, 94 Cal.App.2d 367 [210 P.2d 757]), we are of the opinion that there was sufficient evidence of an oral agreement to share the household expenses of the combined families. Plaintiff testified as follows: "Q. Now did you have any agreement with Mr. Duffey prior to your marriage or about the time of your marriage as to how they,—the living expenses were to be shared? A. We didn't discuss it particularly. I took it for granted that he would carry the burden of a family. However, I have a minor child who has independent means, and I had an allowance by the court, and felt that if I contributed $500.00 to the household per month, it would be more than a fair share for her maintenance and support in my home. Q. You told that to Mr. Duffey? A. I told that to Mr. Duffey, and he even then said, It was far too much, and much too generous and handsome, and splendid, and he could carry the whole load otherwise." Plaintiff further testified that shortly after the purported marriage, her invalid mother came to reside with plaintiff and defendant and that plaintiff voluntarily increased her monthly contribution to $550 to cover the added expense of maintaining her mother there. Defendant testified that it was his understanding that plaintiff would contribute $500 per month and that he would contribute his salary as manager of Bekins Van & Storage and that ". . . we had discussed my salary thoroughly, as well as what contributions she would make to it, and that we felt we could live within that, along with my traveling expenses and entertainment expenses and what work I could do on the place." Defendant denied that he had agreed to pay household expenses in excess of the combined amount of his salary and plaintiff's contribution. His denial created only a conflict in the evidence as to what he had agreed to do. The conduct of the parties and their countless discussions of finances lent support to plaintiff's testimony as to the understanding. As

the trial court is the sole judge of the credibility of witnesses and the weight to be accorded to testimony, we are bound by its implied determination that defendant had agreed to meet all the household expenses which exceeded plaintiff's monthly contribution. The finding is strengthened by the fact that the law imposes a duty on a husband to support his wife and his own children. Moreover, as we say, it was not disputed that defendant without objection did contribute more than his salary.

The trial court having decided that defendant obligated himself to pay the household expenses in excess of plaintiff's agreed contributions, the next problem was to determine the total amount of the household expenses and the total amount contributed by each of the parties thereto. The burden of proving these facts was upon plaintiff. Defendant contends that she did not sustain this burden of proof and we are obliged to agree.

We may say first that plaintiff's testimony was vague, rambling, manifestly incomplete and in material respects unsupported by any reliable corroborative evidence. The trial court did the best it could to unravel the numerous complicated money transactions of the parties, but the task was one which we think would have been successful, if at all, only by means of a reference or a trial in which each shred of evidence would be examined in great detail in order to discover additional facts which might have a bearing upon the validity of the claims of each party against the other. Our problem is to determine whether there was substantial evidence to support a finding that defendant was indebted to plaintiff for expenses which she claimed to have paid on his account in the sum of $10,000 or any other definite sum and whether there was substantial evidence to support a finding that plaintiff was not indebted to defendant for money borrowed from him. This has necessitated a careful examination of the record for evidence shedding some light upon these questions. Plaintiff kept no book of account of the household expenses for the years 1950 and 1951. She presented no data and gave only unsupported figures as to what the expenses were during those years. For the year 1952 and for about three months of 1953 prior to the separation she kept a detailed account, which was in evidence. Beyond that we must look to her own testimony and must give to it the interpretation and effect which tends most strongly toward support of the court's findings. Plaintiff's testimony and her book

account were definite as to the 1952 and 1953 expenses. For the year 1952 the total household account as entered in the book amounted to $19,033.86 and for three months of 1953 it totaled $4,490.21. Beyond that we must look to her testimony as to the total household expenses over the period from the marriage to the separation. She was questioned by her counsel as to the average monthly expenses of the household and she testified: "Oh, it ran a thousand and more a month. There may have been some lighter months, but by and large it was a large household, a lot of entertaining of Mr. Duffey's business acquaintances and friends, mostly, and of the children entertaining and so on, and there was a big, big running expense every month." Next we look to plaintiff's testimony that from January 24, 1950, to April 15, 1953, defendant deposited in the household account $25,873 and she deposited therein $23,202. Her deposits would amount to about $1,500 more than the amount she agreed to contribute of $500 per month for a time before her mother came to live with them some time in 1950 and $550 per month thereafter. Plaintiff testified that during the same period defendant contributed $25,873 to the household account. This, incidentally, was some $3,000 more than the amount of defendant's salary over that period. We have examined plaintiff's account book for the 1952-1953 period. It shows that during that period plaintiff contributed $8,909.17 and defendant contributed $13,747.69. However, during this year of excessive expenditures there were numerous extraordinary expenses such as sanitarium and medical expenses for plaintiff's mother and other items for schooling which presumably should have been charged to the guardianship account of plaintiff's daughter. Obviously, the account book for that period sheds no light upon the total amount of the household expenses for three years and two months. It furnishes no basis for a computation of the expenses during 1950 and 1951. If 1952 was a typical year, the total household expenses would not only have exceeded by some $15,000 the amount to which plaintiff testified but would have exceeded by approximately the same amount the sums which, according to plaintiff's testimony, were contributed by the parties. If we are to take plaintiff's estimate of the expenses at $1,000 per month, they would total only $38,000. But plaintiff testified that there was actually contributed by herself and the defendant some $49,000. When we give effect to plaintiff's testimony as to the total household expenses for the period and the amounts which she and de-

fendant separately contributed thereto, we find that there was no evidence whatever that the household expenses exceeded the total amount of the contributions of the parties.

We have a final word as to our problem of unearthing evidence which would support the finding that defendant is indebted to plaintiff in the sum of $10,000, namely, that plaintiff's brief has been of no assistance to us whatever. The most we find in it is what purports to be a statement of plaintiff's assets at the time of the commencement of the cohabitation amounting to $168,000, or with contributions from the guardianship account, to $206,000 and a like statement of assets at the end of the period amounting to $157,-851.39. Plaintiff improved her several properties, built houses, planted avocados, and in other ways spent money lavishly. The fact, if it be a fact, that plaintiff's assets were diminished is wholly irrelevant to the issues in the case. Plaintiff's counsel are not subject to criticism for the state of the record. They did the best they could to elicit from their client testimony as to definite facts pertinent to the issues. What they got was a torrent of words and no useful facts other than those we have stated. In reaching the foregoing conclusion we have naturally disregarded the denials of the defendant and have given to plaintiff's evidence the greatest effect that could reasonably be claimed for it. It does not by any means measure up to substantial evidence that defendant is indebted to plaintiff in any ascertainable amount. And we do not doubt that if the able trial judge had anticipated the difficulty that would be encountered in an effort to ascertain the pertinent facts of the case he would have ordered a reference for an audit and a detailed investigation of the transactions of the parties.

Plaintiff testified volubly as to an infinite number of conversations with defendant concerning finances; upon an occasion immediately before the separation she told defendant that he owed her money and he offered to give her a check or a note for some amount "I don't know, twelve thousand or something like that" etc. She asked for a check, defendant offered her a note which she refused, whereupon she ordered him to leave. It is evident that there was no agreement on the part of defendant to pay plaintiff any definite sum and no evidence of the statement of an account. If there was an attempt of the parties to reconcile their differences in money matters it came to naught. Obviously, any effort of defendant toward an agreement was made with a view to a continuance

of the marital relationship and the advantages which he and his children had been enjoying for several years. But there was to be no peace, only a final parting of the ways. The court made no finding as to any promise by defendant of a settlement or of an admission of liability. We attach no importance to this alleged conversation. The evidence was not such as to require the court to find that the parties ever reached an agreement as to any amount owing by defendant.

With respect to defendant's counterclaim he testified there was a balance of $5,641 due him on loans which he had made to plaintiff from his personal account for the improvement of her separate property. He introduced into evidence a recapitulation sheet showing loans made to plaintiff and the sums she repaid. The bulk of the remaining balance claimed by defendant is represented by two advances totaling $5,000 made in 1952. Plaintiff testified that the $5,000 was deposited in the household account and used to pay for painting and roofing plaintiff's home. She further testified that the $5,000 was not a loan and was never considered by either of the parties as a loan. The court found that all sums plaintiff had borrowed from defendant had been repaid and that it was not true that plaintiff had borrowed the $5,641 from defendant. The conflict in the evidence on this issue was resolved against defendant by the trial court, the findings are supported by substantial evidence and we are bound by them.

The part of the judgment which denies defendant recovery on his counterclaim is affirmed; the part of the judgment which awards plaintiff $10,000 is reversed.

Wood (Parker), J., and Vallée, J., concurred.

A petition for a rehearing was denied November 14, 1956, and respondent's petition for a hearing by the Supreme Court was denied December 12, 1956.